**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ZANDREA GREENE,**

      **Plaintiff,**                                **Case No. 08-12968**

**v.**                                      **Hon. Victoria A. Roberts**

**BENEFIT MORTGAGE CORPORATION,**
**f/k/a LATHRUP MORTGAGE**
**CORPORATION, RYAN J. ATTENENSON,**
**SOUTHSTAR FUNDING, LLC and**
**HOMECOMINGS FINANCIAL, LLC,**
**jointly and individually,**

      **Defendants.**
_____

**OPINION AND ORDER**

**I.**    **INTRODUCTION**

    This matter is before the Court on Defendant Homecomings Financial, LLC's Motion to Dismiss [Doc #2], filed July 18, 2008.  For the reasons stated below, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

**II.**    **BACKGROUND**

    This consumer lending case arises out of a mortgage refinance and foreclosure on Plaintiff's home.  Plaintiff requests equitable relief and damages against Benefit Mortgage Corporation, a mortgage company; Ryan Attenenson, a loan officer/employee of Benefit Mortgage; Southstar Funding, LLC, a loan funding company; and Homecomings Financial, LLC ("Homecomings), a loan servicer.  She accuses the Defendants of predatory lending.

1

Plaintiff's Complaint alleges: Count I - Violation of Michigan Mortgage Brokers, Lender and Service Lending Act ("MBLSA"), MCL 445.1651 et seq.; Count II - Violation of Michigan Consumer Mortgage Protection Act ("CMPA"), 445.1631 et seq.; Count IV (sic) - Fraudulent Inducement; Count V - Misrepresentation; Count VI - Concert of Action; Count VII - Violation of Truth in Lending Act ("TILA"); Count VIII - Violation of the Real Estate Settlement and Procedures Act ("RESPA"); Count IX - Quiet Title; and Count X - Injunctive Relief, Equity.  Only Counts I, II, VI, VII and IX are against Defendant Homecomings.

Plaintiff says she was unwittingly placed into an adjustable rate mortgage ("ARM") with a 12.207 annual percentage rate ("APR") and a pre-payment penalty, and that the Defendants engaged in various related fraudulent acts and/or misrepresentations.  These acts include: (1) Benefit Mortgage and/or Southstar included payment of her 2003-2004 property taxes on the HUD-1 Settlement form but neither entity ever paid the taxes; (2) Benefit Mortgage and/or Southstar set up an escrow account for the 2005 property taxes according to the HUD-1 Settlement form, but they never paid the 2005 taxes; (3) Benefit Mortgage and/or Southstar failed to provide Plaintiff with an escrow statement identifying the escrow of any funds; (4) Homecomings set up a second tax escrow account for the 2005 taxes, resulting in an increase in Plaintiff's mortgage payments; (5) Plaintiff paid Homecomings a $750.00 loan modification fee, but Homecomings refused to communicate with her and failed to send her the modification agreement and other loan repayment paperwork; (6) Benefit Mortgage's appraiser charged her a fee of $275.00 for an appraisal, but this fee was not disclosed in the HUD -1 Settlement form; (7) Defendants, by assignment and/or direct

2

or indirect origination and funding of Plaintiff's loan transactions, encouraged her to sign the mortgage documents without proper notarization; (8) Defendants, by assignment and/or direct or indirect origination and funding of Plaintiff's loan transactions, charged excessive fees, including a yield spread premium and extra mortgage broker fees; (9) Defendants, by assignment and/or direct or indirect origination and funding of Plaintiff's loan transactions, failed to give Plaintiff required disclosures regarding her "high rate mortgage"; (10) Defendants created or participated in the continuance of a loan refinance procured through fraud, deceit and in violation of state and federal law; and (11) Defendants fraudulently subjected Plaintiff to foreclosure and loss of her investment in her home.

Defendant Homecomings says the claims against it should be dismissed for failure to state a claim.

### III.    STANDARD OF REVIEW

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any attached exhibits, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims. See *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).  Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff's allegations plausibly establish a case which would entitle the plaintiff to relief.  *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1968-70

3

(2007).  Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Id*. at 1965. *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 296 (2d ed. 1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. *Id*.

On the other hand, more than bare assertions of legal conclusions are required to satisfy the notice pleading standard. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id*. at 437.  "A judge may not grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).

## IV.   CASE LAW AND ANALYSIS

### A.   TWOMBLY ARGUMENT

Homecomings argues that Plaintiff's entire complaint should be dismissed under *Twombly* because its "vague legal conclusions, detached from any factual predicate supporting the claim or showing Plaintiff's entitlement to relief, are insufficient to state a claim upon which relief can be granted."  In particular, it argues that the Complaint "is devoid of any factual allegations in support of these claims against Homecomings and

4

fails to give Homecomings notice of the grounds upon which these claims rest."  The Court disagrees.

The nature of each of Plaintiff's claims is sufficiently articulated such that Homecomings and the Court need not "guess" what Plaintiff is alleging.  For example, as a factual predicate in support of all claims, Plaintiff alleges that the 2003-2004 property taxes included and charged to her in the HUD-1 Settlement form were never paid by Benefit Mortgage or Southstar Funding.  She also says that funds allegedly placed in escrow for the 2005 property taxes were never paid and that she was never provided with any escrow document regarding these funds.  She says that Homecomings created a tax escrow account and charged her additional funds for the 2005 taxes.  She also says Homecomings induced her to apply for a loan modification and pay related fees of $750.00, but then refused to communicate with her or proceed with a loan modification.

Although the Court believes that some claims are insufficiently pled, the Complaint is not defective in its entirety.  Generally, the Complaint contains "sufficient factual information to provide the 'grounds' on which the claims rest. *Schaaf v Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

**B.    COUNT I - MORTGAGE BROKERS, LENDERS, AND SERVICER LICENSING ACT**

Count I alleges the Defendants violated the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act ("MBLSLA"), MCL 445.1672 et seq.  Plaintiff says Defendant Homecomings violated MBLSLA by: (1) failing to conduct business in accordance with the Act and other laws; (2) intentionally, or with gross negligence,

failing to provide Plaintiff required material disclosures; (3) engaging in fraud, deceit, and/or material misrepresentation in connection with her mortgage transaction; and (4) charging excessive fees.  Plaintiff specifically cites to sub-sections (a), (b), and (e) in her response to Defendant's Motion.  These sections outline the following conduct as violative of the Act:

> (a) Fail to conduct the business in accordance with law, this act, or a rule promulgated or order issued under this act.
> (b) Engage in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act.
>
> .           .           .
>
> (e) Fail to comply with 1966 PA 125, MCL 565.161 to 565.164, regulating the handling of mortgage escrow accounts by mortgagees.

Plaintiff says the HUD -1 Settlement Statement clearly shows that she paid $2,400.75 for the 2003-2004 taxes, and that $2,392.05 was placed in "escrow" for the 2005 taxes.  Thus, Plaintiff says Defendant Homecomings wrongfully created a tax escrow account and charged her additional funds to pay 2005 taxes that she already paid.  Plaintiff also says she did not receive an escrow statement indicating the escrow of any of those funds.

Homecomings says Plaintiff does not distinguish the assertions against the named Defendants, and that each of the assertions is insufficient as a matter of law with respect to Homecomings.  Homecomings also says that Plaintiff failed to plead fraud with particularity, as required under federal and Michigan law.

Homecomings correctly notes that Fed. R. Civ. P. 9(b) and MCR 2.112(B)(1) require fraud to be pled with particularity.  The Sixth Circuit holds that Rule 9(b) must be read liberally. See *Coffey v. Foamex L.P.*, 2 F.3d 157, 161 (6th Cir. 1993).  It is also true

6

that at a minimum, the plaintiff must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* at 162. "[A]llegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id.* at 162. Moreover, where there are multiple defendants, a claim must identify who made the alleged misrepresentations. *Hoover v. Langston Equipment Assoc., Inc.,* 958 F.2d 742, 745 (6th Cir. 1992). A pleading that fails to comply with the requirements of Rule 9(b) fails to state a claim under Rule 12(b)(6). *Michigan ex rel. Kelley v. McDonald Dairy Co.*, 905 F.Supp. 447, 450 (W.D. Mich.1995).

Plaintiffs' allegation regarding Homecomings' failure to provide an escrow statement, and its creation of a tax escrow account and additional assessment of funds for the 2005 property taxes, raise a plausible claim for relief under federal and state law. 12 U.S.C.2609(c)(1)(B) requires that an initial escrow account statement be given to the borrower at closing if the account established when the loan is made or within 45 days of the establishment of the account. There is no exemption from the initial account statement requirement if the account is overdue. Moreover, 24 C.F.R. 3500.17(i)(1) requires a lender to provide a borrower with an annual escrow account statement, provided the borrower is not more than 30 days overdue at the time of the escrow analysis.

Similarly, MCL 565.163 provides: "if, pursuant to an agreement, a mortgagor has paid sufficient funds into an escrow account for the purpose of paying taxes on mortgaged real property, and if the mortgagee or his agent has not paid those property

taxes, then the person to whom the mortgagor paid the funds shall be liable to the mortgagor for any penalties or fees incurred by the mortgagor as a result of that failure to pay taxes."

Plaintiff also says Homecomings told her she was eligible for a loan modification, required her to pay a fee of $750.00 to process her paperwork, and, after receiving her money, refused to communicate with her regarding the modification or a deed in lieu of foreclosure.  While Homecomings is correct that a loan servicer has no duty to agree to loan modifications or repayment plans with delinquent borrowers, Plaintiff's claim is based on Homecomings' statements and actions after agreeing to a loan modification. Plaintiff says these statements and actions had the capacity to mislead the borrower in violation of MCL § 445.1634, and constitute underlying violations of MCL § 445.1672.

Since § 445.1634 applies to persons offering to make or making a mortgage loan, that statute is inapplicable to Homecomings.  However, as the Court outlines in Section D, these allegations may also raise a plausible claim for fraudulent inducement or misrepresentation.  The Court particularly notes it is a violation of the MBLSLA to fail to conduct business in accordance with the law, or to engage in fraud, deceit, or material misrepresentation in connection with any transaction governed by the Act. MCL 445.1672(a), (b).

Construing the Complaint liberally in Plaintiff's favor, *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976), accepting as true all factual and permissible inferences therein, *Id.*, but not accepting as true legal conclusions and unwarranted factual inferences, *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003), Plaintiff alleges facts that could plausibly entitle her to relief.

8

The Court DENIES Defendant's Motion to Dismiss Count I.

### C.    COUNT II - MICHIGAN CONSUMER MORTGAGE PROTECTION ACT

Count II alleges Defendants violated the Michigan Consumer Mortgage
Protection Act ("CMPA"), MCL § 445.1631 et seq.  However, the CMPA provides for an
enforcement action by the commissioner, § 445.1639, or by the attorney general or
county prosecuting attorney, § 445.1640.  It does not provide for a private cause of
action. *Strickfaden v Park Place Mortgage Corp.*, 2008 U.S. District LEXIS 61592
(2008).

Since there is no legal basis to support Count II, the Court GRANTS Defendant's
Motion to Dismiss Count II.

### D.    COUNT VI  - CONCERT OF ACTION

Count VI alleges concert of action.  A plaintiff may recover under concert of
action if he or she can establish that all defendants acted tortiously pursuant to a
common design. *Abel v. Eli Lilly & Co.*, 418 Mich. 311, 338 (Mich. 1984).
However,"concert of action is itself a claim which, like conspiracy, cannot exist
independently of an underlying tortious act." *Cousineau,* 363 N.W.2d at 731 (Mich. Ct.
App. 1985).

"[A] concert of action case does not require that the plaintiff be unable to identify
the specific defendant who caused his injury." *Abel v. Eli Lilly & Co.*, 418 Mich 311, 338
(1984). Rather, each defendant "is jointly and severally liable for the entire amount of
damages, although he may be entitled to contribution from his fellow tortfeasors." *Abel*,
94 Mich App 59, 73 (1979). "Even if defendant caused no harm himself, he is liable for
the harm caused by his fellows because all acted jointly." *Abel*, 94 Mich App 73.  "[To]

9

state a cause of action, a plaintiff need only allege that the defendants were jointly engaged in tortious activity as a result of which the plaintiff was harmed." *Abel*, 94 Mich App 73.

Plaintiff asserts two claims against Defendants Benefit Mortgage and/or Southstar which could form the basis of an underlying tort for her concert of action claim: (1) fraudulent inducement and (2) misrepresentation.   These claims implicate Fed. R. Civ. P. 9(b), which requires heightened pleading in all allegations of fraud. When considering whether a party complied with the Rule 9(b) requirement to plead fraud with particularity, the Court must also consider the "short and plain statement of the claim" requirement of Rule 8(a)(2). Fed. R. Civ. P. 8(a)(2); *Sanderson v. CA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir.2006). " 'Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony.' " *Sanderson,* 447 F.3d at 876 (quoting *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir.1988)). "The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir.1999) (citing Michaels Bldg. Co., 848 F.2d at 679).

In order to comply with Rule 9(b), a pleading must, at a minimum, include allegations as to "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir.2003) (quoting Coffey v. Foamex L.P., 2 F.3d 157, 161-62

10

(6th Cir.1993)).  Moreover, where there are multiple defendants, a claim must identify who made the alleged misrepresentations. *Hoover v. Langston Equipment Assoc., Inc.,* 958 F.2d 742, 745 (6th Cir. 1992). A pleading that fails to comply with the requirements of Rule 9(b) fails to state a claim under Rule 12(b)(6). *Michigan ex rel. Kelley v. McDonald Dairy Co.*, 905 F.Supp. 447, 450 (W.D.Mich.1995).

In her fraudulent inducement and misrepresentation claims, Plaintiff says Defendants: (1) promised her terms they had no intention of providing, including that she would be placed into a fixed rate mortgage; (2) lied to her that her outstanding property taxes would be paid upon refinance; (3) lied to her that an escrow account would be created for future property taxes; (4) neglected to calculate money received for services; (5) failed to provide her with disclosures regarding the loan terms and conditions before the transaction; (6) charged her excessive fees, including a yield spread premium for steering her into a high interest ARM; and (7) deceived her into believing the mortgage loan was in her best interest and would improve her credit.

Plaintiff attached numerous Exhibits to her Complaint which show the date and relevant transactions referred to in the Complaint.  These documents include:

(1) a Truth-In-Lending Disclosure Statement with no variable rate feature, dated May 13, 2005 (Exhibit #2 to Complaint);

(2) a Settlement Statement dated June 23, 2005 (Exhibit #3 to Complaint);

(3) a Truth-In-Lending Disclosure Statement with a variable rate feature, dated June 23, 2005 (Exhibit #5 to Complaint);

(4) Wayne County Tax Receipt for tax years 2003 and 2004, showing a balance of $2,339.82, dated May 20, 2005 (Exhibit #6 to Complaint);

(5) Wayne County Tax Receipt for tax years 2003 and 2004, showing a payment of $2,400.75 and a balance of $0.00, dated June 29, 2005 (See Exhibit #6 to

11

Complaint);

(6) Wayne County Tax Receipt for tax year 2005, showing a payment of $373.27 and a balance of $0.00, dated March 2, 2007 (Exhibit #7 to Complaint);

(7) Western Union payment receipt in the amount of $100.00 to Homecomings Financial, dated June 29, 2007 (Exhibit #8 to Complaint);

(8) Homecomings Financial application, signed by Plaintiff and dated July 13, 2007 (Exhibit #9 to Complaint);

(9) Facsimile report dated July 13, 2007, showing "OK" transmission of Homecomings Financial application to phone number 1-800-211-3561 (See Exhibit #9 to Complaint);

(10) Western Union payment receipt in the amount of $650.00 to Homecomings Financial, dated July 15, 2007 (Exhibit #10 to Complaint);

(11) Letter from Homecomings Financial to Zandrea Greene regarding repayment program, dated August 20, 2007 (Exhibit #11 to Complaint);

(12) Letter from Homecomings Financial to Zandrea Greene regarding foreclosure alternatives, dated October 15, 2007 (Exhibit #12 to Complaint);

(13) Letter from Zandrea Greene to Homecomings financial regarding her financial hardship, dated October 19, 2007 (Exhibit #13 to Complaint);

(14) Letter from Homecomings Financial to Zandrea Greene regarding foreclosure sale, dated November 20, 2007 (Exhibit #14 to Complaint);

(15)  Letter from Zandrea Greene to Homecomings financial regarding her financial hardship, dated November 23, 2007 (Exhibit #15 to Complaint);

(16) Affidavit of Zandrea Greene, dated June 12, 2008 (Exhibit #2 to Plaintiff's Motion for Temporary Restraining Order).

These documents are considered part of Plaintiff's pleadings for purposes of this

Motion. See *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 731 n.3 (7th Cir. 2005).

In general, actionable fraud must be predicated on a statement relating to a past

or an existing fact. *Samuel D Begola Services, Inc. v. Wild Bros.*, 210 Mich App. 636,

639 (1995).  There are six elements that must be proven to sustain a claim of

12

fraudulent misrepresentation:

> (1) The defendant made a material representation.
>
> (2) The representation was false.
>
> (3) When the defendant made the representation, it knew that it was false, or the defendant made the representation recklessly, without any knowledge of its truth, and as a positive assertion.
>
> (4) The defendant made the representation with the intention that it should be acted on by the plaintiff.
>
> (5) The plaintiff acted in reliance on the representation.
>
> (6) The plaintiff suffered injury due to his reliance on the representation.
>
> See *Hord v. Environmental Research Inst.*, 228 Mich. App. 638, 642 (1998).

However, Michigan also recognizes fraud in the inducement which occurs where a party materially misrepresents *future* conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon. *Samuel D Begola Services, Inc.*, 210 Mich App. at 636.  To establish fraud in the inducement, a party must show that:

> (1) the defendant made a material representation;
>
> (2) the representation was false;
>
> (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion;
>
> (4) the defendant made the representation with the intention that the plaintiff would act upon it;
>
> (5) the plaintiff acted in reliance upon it; and
>
> (6) the plaintiff suffered damage.

13

See *Belle Isle Grill Corp v. Detroit*, 256 Mich App 463, 477 (2003).

Plaintiff alleges that Defendants Benefit Mortgage and/or Southstar engaged in various acts of fraud, misrepresentation and deceit in the origination of the loan, and that Defendant Homecomings participated in those acts through abusive practices in servicing the loan. Plaintiff says Homecomings set up a tax escrow account to pay the 2005 taxes, despite knowing the lender had already charged her from the mortgage proceeds for those same taxes. Plaintiff also says Homecomings told her she was eligible for a loan modification, induced her to pay the $750.00 paperwork fee, but then did not provide the agreement and refused to talk to her.

Plaintiff says Defendants acted in concert pursuant to a common design to induce and keep her in a high interest ARM. This design included: (1) fraudulently misrepresenting information; (2) inducing her to sign documents without proper notarization; (3) refusing to correct violations of state and federal law relating to mortgage lending, brokering and servicing of loans; and (4) engaging in fraudulent and deceptive consumer practices. Plaintiff says she was damaged by: (1) increased finance charges, (2) excessive loan expenses and interest rates, (3) loss of credit opportunities, and (4) loss of her home through foreclosure.

Defendant Homecomings says Plaintiff's concert of action claim fails because she does not allege that Homecomings engaged in any separate underlying tort.

As a general rule, a tort claim under Michigan law cannot rest upon the breach of a contractual obligation. See *Brock v. Consolidated Biomedical Laboratories*, 817 F.2d 24, 25-26 (6th Cir. 1987); *Fultz v. Union-Commerce Associates*, 470 Mich. 460, 683

14

N.W.2d 587, 591-93 (2004).  The existence of a contractual relationship does not altogether preclude a tort-based theory of recovery, but any such tort claim must rest upon a duty owed by the defendant to the plaintiff "that is separate and distinct from the defendant's contractual obligations." *Fultz*, 683 N.W.2d at 592.

Plaintiff alleges violations of the MBLSLA, MCPA, TILA and RESPA.  The allegation regarding violation of the MBLSLA is viable against Homecomings and may establish a legal duty separate and distinct from any contractual obligation.  Her allegations also raise violations of other implied or statutory duties.  Thus, Plaintiff alleges facts that could establish an underlying tort on which to base a concert of action claim.

The Court DENIES Defendant's Motion to Dismiss Count VI, but orders Plaintiff to amend her Complaint to plead fraud with more particularity.

### E.    COUNT VII - TRUTH IN LENDING ACT

Count VII alleges various violations of the TILA and Regulation Z.  Defendant says Plaintiff fails to state a claim under TILA and that her TILA claim is time-barred by the one-year statute of limitations.  Plaintiff says Defendants' fraudulent conduct precludes application of the statute of limitations; she says her TILA claims are subject to the equitable tolling doctrine.

TILA's purpose is twofold: to facilitate the consumer's acquisition of the best credit terms available and to protect the consumer from divergent and at times fraudulent practices stemming from the uninformed use of credit. *See Mourning v. Family Publication Service, Inc.*, 411 U.S. 356, 363 (1973).  TILA is a remedial statute and should be construed liberally in favor of the consumer. *Bizier v Globe Financial*

15

*Services, Inc.*, 654 F.2d 1, 3 (1st Cir. 1981).

To insure that the consumer is protected, the TILA and the regulations must be absolutely complied with and strictly enforced. *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F2d 65, 67 (4th Cir. 1983). Even technical or minor violations of the TILA impose liability on the creditor. *Jackson v Grant*, 890 F2d 118, 120 (9th Cir. 1989).

Assignees of creditors can be liable under TILA, but only if the violation is apparent on the face of the disclosure statement (except where the assignment was involuntary). 15 U.S.C. § 1641(f). TILA imposes liability only on purchasers and assignees of mortgages, so loan servicers cannot be liable under TILA. 15 U.S.C. § 1641(f); *Wile v Green Tree Servicing, LLC*, No. 04-2866, 2004 U.S. Dist. LEXIS 223709 at 5-6 (E.D. Pa 2004).

TILA contains a one-year statute of limitations on damage claims. It says:

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e).

TILA also contains a right of rescission for certain transactions, with a separate three-year time limit. TILA provides a limited extension of the three-year time period when "(1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding." 15 U.S.C. § 1635(f). Under such circumstances, "the obligor's right of rescission shall expire three years after the date of consummation of the transaction

16

or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later." *Ibid.*

TILA is subject to equitable tolling in cases involving fraud. For application of the doctrine of fraudulent concealment, the one year period will begin to run when the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation. *Jones v TransOhio Sav. Assn.*, 747 F2d 1037, 1041 (6th Cir. 1984). To satisfy the standard of equitable tolling in the fraudulent concealment context, a plaintiff must establish that: "'(1) the defendant took affirmative steps to conceal the plaintiff's cause of action; and (2) the plaintiff could not have discovered the cause of action despite exercising due diligence.'" *Jarrett v. Kassel*, 972 F.2d 1415, 1423 (6th Cir. 1992)); see also *Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 908 (E.D. Mich. 2003).

Plaintiff's Complaint alleges that Homecomings both purchased Plaintiff's mortgage and serviced the loan. Plaintiff's Complaint also alleges various violations that appear on the face of the disclosure, such as failing to include the yield spread premium and other fees on the disclosure. Accepting as true Plaintiff's allegation that Homecomings purchased her loan as well as serviced it, Homecomings' status as a loan servicer is not a bar to Plaintiff's TILA claim against it since Homecomings could also be subject to liability as an assignee or purchaser. However, the allegations regarding disclosure violations must fail.

Plaintiff says she did not receive any documents before the closing, and the packet of documents she received after the closing contained only the ARM note and

17

not the mortgage.  Plaintiff also says she only recently learned that taxes included as

paid and escrowed in the HUD-1 Settlement Statement were not paid.  She says she

never received an escrow statement identifying the escrow of these funds.  She says

Homecomings paid the 2005 taxes, created a tax escrow account, and charged her a

second time for payment of the 2005 taxes.  After creation of this tax escrow account,

Plaintiff says she had difficulty paying the mortgage due to the resulting increase.

However, with the exercise of due diligence Plaintiff had reasonable opportunity to

discover in 2005 or at least in 2006, after the creation of the tax escrow account, that

she had received inaccurate disclosures.  Her lawsuit filed in June 2008, nearly three

years later, was untimely under TILA.

Plaintiff also seeks rescission of the mortgage loan under TILA.  Defendant says

Plaintiff's rescission claim is barred because the foreclosure sale terminated any right to

rescind as a matter of law. Plaintiff's "closing" occurred on or about June 23, 2005.

Plaintiff's mortgage was foreclosed and her home was sold at a foreclosure sale on

December 20, 2007.  Plaintiff's six month right to redeem the property expired on June

20, 2008.  Plaintiff's Complaint was filed in state court on June 12, 2008 and removed to

this Court on July 18, 2008.  Although Plaintiff filed the Complaint before the end of the

redemption period and received injunctive relief in the state court, she had already lost

her right to rescind the mortgage under TILA as a result of the foreclosure sale.  TILA

provides a limited right to rescind a mortgage loan if the required disclosures are not

provided, but a foreclosure sale terminates any unexpired right to rescind. *Worthy v.*

*World Wide Financial Services, Inc.*, 347 F. Supp. 502, 506-08 (E.D. Mich. 2004), aff'd

192 Fed. Appx. 369 (6th Cir. 2006).

18

Plaintiff also says her rescission claim under TILA is not barred by the statute of limitations because the Federal Trade Commission is conducting an ongoing investigation of Homecoming's conduct in this matter.  However, there is no allegation that any enforcement agency began a proceeding against Homecomings within three years of the consummation date of this transaction to enforce the provisions of TILA. Thus, Plaintiff wrongly relies on § 1635(f) to extend the statute of limitations.  Unlike the one year limitation on an action for damages which is subject to tolling, there is no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998).

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Count VII.

### F.      COUNT IX - QUIET TITLE

Count IX alleges "Plaintiff is entitled to have the sheriff's sale set aside, the mortgage voided based on its fraudulent creation and title quieted in herself."  Plaintiff's Complaint does not cite any authority in support of this claim.

A plaintiff has an obligation to provide grounds for entitlement to relief which requires more than labels  and conclusions. *Twombly* at 1964-1965.  Since Plaintiff has not done so, this claim fails.

The Court GRANTS Defendant's Motion to Dismiss Count IX.

### G.      CONCLUSION

For the above reasons, Defendant Homecoming's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**  Counts II, VII and IX are dismissed against Defendant Homecomings; Counts I and VI remain pending.

19

2:08-cv-12968-VAR-PJK   Doc # 7   Filed 01/08/09   Pg 20 of 20   Pg ID 217

The Court orders Plaintiff to amend her Complaint within 30 days to plead fraud with more particularity, pursuant to Fed. R. Civ. P. 9(b).

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  January 8, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 8, 2009.

s/Linda Vertriest
Deputy Clerk